**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,**

v.

**EASTON LAND & DEVELOPMENT, INC., SES, Inc., and Samuel M. Easton, Jr., Defendants-Appellees.**

**No. 82–3170.**

United States Court of Appeals, Eleventh Circuit.

Feb. 2, 1984.

DER: Yeah.

Ruth E. Peters, Mary Ann Bernard, Patricia Saik, U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellant.

Harry L. Shorstein, Jacksonville, Fla., for defendants-appellees.

Before HENDERSON and HATCHETT, Circuit Judges, and JONES, Senior Circuit Judge.

HATCHETT, Circuit Judge:

The Secretary of Labor, Raymond J. Donovan (Secretary), appeals the district court's judgment declaring that the Ambassador Hotel and the Downtowner Lounge are not a single "enterprise" within the meaning of the Fair Labor Standards Act, 29 U.S.C.A. § 203(r). We affirm.

Samuel Easton, Jr., his brother, and retired father own Easton Land Development, Inc. (Easton) in equal shares. In 1971, Easton bought the Ambassador Hotel building (hotel) in Jacksonville, Florida, and, in 1975, opened the Downtowner Lounge (lounge). The lounge is one of several businesses located in the same building as the hotel. In 1976, Samuel Easton, his brother, and his father formed SES, Inc. which operates the hotel.

In 1981, the Secretary of Labor brought this action under the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–216, to enjoin violations of the minimum wage, overtime, and record keeping provisions of the Act at the lounge and hotel, and to restrain the withholding of unpaid minimum wage and overtime compensation due employees at these businesses. After trial, the district court held that the hotel and lounge were not an "enterprise" within the Fair Labor Standards Act, and therefore, Easton had not violated the Fair Labor Standards Act.

The district court dismissed the Secretary's complaint without reaching the issue of whether the three-year statute of limitations for "willful" violations would apply if the hotel and lounge were covered by the Fair Labor Standards Act. The Secretary appeals from that decision.

■ Whether the lounge and the hotel are covered by the Fair Labor Standards Act depends on whether they are an "enterprise engaged in commerce or in the production of *goods for commerce*." 29 U.S. C.A. § 206(a). There is no dispute that the hotel and lounge are engaged in commerce. The only issue is whether the two entities constitute an "enterprise." The Fair Labor Standards Act defines enterprise as "related activities performed (either through unified operation or common control) by any person or persons for a common business purpose." 29 U.S.C.A. § 203(r). The statutory provision requires the existence of three elements: (1) related activities; (2) unified operation or common control; and (3) a common business purpose. All three elements must be present for an "enterprise" to exist. *Dunlop v. Ashy,* 555 F.2d 1228, 1231 (5th Cir.1977).

The Secretary contends that the three requisite elements exist in the operation of the hotel and lounge. He claims the activities of the hotel and lounge are "related" as a matter of law, because the lounge owes its existence to the liquor license issued for the hotel, and derives ten to twenty percent of its business from hotel guests. The hotel guests, in turn, utilize the lounge as a convenient source of food and liquor. "Common control" is established by Easton's undisputed ownership of both entities. Additionally, under applicable state alcoholic beverage control laws, Easton, as owner of the hotel and liquor license, has the duty to control the lounge on the hotel premises. Finally, the Secretary argues the businesses operate for a "common business purpose," because they offer each other significant operational advantages and advance the profits of Easton.

Easton contends the three elements are lacking. It claims that from its inception, the lounge was conceived, managed, and operated to be independent and separate from the hotel. The operation of the two establishments are distinct from each other, and the fact that the lounge liquor license derived its existence from the hotel is immaterial. Easton also argues that enhancement of profits, without additional interrelationship, does not establish a "common business purpose."

### A. Related Activities

■ Activities are related when they are "the same or similar" or when they are "auxiliary and service activities." S.Rep. No. 145, 87th Cong., 1st Sess. 31, *reprinted in* 1961 U.S.Code Cong. & Ad.News 1620, 1660; *see also Brennan v. Veterans Cleaning Service, Inc.,* 482 F.2d 1362, 1366 (5th Cir.1973). The Fifth Circuit has characterized "auxiliary and service activities" as activities involving "operational interdependence in fact." * *Brennan,* 482 F.2d at 1367. *See also Wirtz v. Savannah Bank and Trust Company of Savannah,* 362 F.2d 857, 860–61 (5th Cir.1966). In *Wirtz,* a bank owned a fifteen-story building and rented eleven floors to various tenants. The bank failed to pay minimum wages to its employees whose duties were limited to the portion of the building leased to tenants. The Fifth Circuit held that the operation of the office building was auxiliary to the bank, and therefore, the bank had to pay minimum wages to all of its employees. The court held that certain advantages such as additional revenue, a favorable public image, and tax benefits accrued to the bank because of its office building operation.

In the present dispute, the district court distinguished *Wirtz.* It held that the hotel did not obtain any advantage from the operation of the lounge. It declared that the activities of the lounge failed to add income to the hotel and failed to strengthen the public image of the hotel. The district court also ruled that the hotel did not obtain any tax advantages from the lounge's

---

* Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding on this court. *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

operation. The district court is correct. Unlike *Wirtz,* the present dispute involves no operational interdependence between the Ambassador Hotel and the Downtowner Lounge. Each entity operates with separate financial records. Each entity files its own tax returns, has its own checking account, and makes managerial decisions on its own. The manager of the lounge has complete control over decisions affecting it. It is clear, therefore, that no substantial advantages accrue to the Ambassador Hotel by the operation of the Downtowner Lounge. *Brennan,* 482 F.2d at 1367.

Providing food and bar service and providing overnight accommodations are clearly not the "same." *Usery v. Mohs Realty Corporation,* 424 F.Supp. 20, 27 (W.D.Wis. 1976). Under the facts of the present dispute, neither are they "similar." In *Usery v. Mohs Realty Corporation,* the district court found that the activities of a restaurant and a motel were similar because they provided services to customers choosing to satisfy their complementary needs for food and shelter away from home. *Usery,* 424 F.Supp. at 27. The district court held, therefore, that the restaurant and motel were related in that they are a "department store for complementary services rather than goods." *Usery,* 424 F.Supp. at 27.

In the present dispute, the district court distinguished *Usery.* It held that the lounge and hotel did not coexist to provide customers the complementary needs of food and lodging away from home. The district court determined that the hotel caters to persons in lower economic brackets, while the lounge caters to people in the middle to upper income bracket. The lounge failed to provide room service for hotel guests, and the guests could not charge food and drinks to their hotel accounts. In *Usery,* room service was available to the hotel guests, and the guests were able to charge food and drinks to their hotel accounts. Because of these differences, the district court held *Usery* inapplicable to the present dispute.

We find *Usery* factually distinguishable from the present dispute. Moreover, we hold that the lounge and hotel are not involved in "similar" activities because of the different clientele each entity serves. Since they serve different clientele, the hotel and lounge are not providing food and shelter to the same customers. The hotel offers rooms to lower income people while the lounge offers food and liquor to middle and upper income people. There is very little exchange of customers between the entities.

B. Unified Operation or Common Control

In order to constitute an "enterprise" within the Fair Labor Standards Act, the related activities of the businesses must be conducted "through unified operation or common control." 29 U.S.C.A. § 203(r). The district court found that the activities of the lounge and hotel were not conducted through a unified operation. It based its decision on various factors which display the distinct operations of each entity. The hotel and lounge kept separate books; they did not intermingle funds; they operated under separate occupational licenses; they obtained separate liability and workmen's compensation insurance; they ordered supplies separately; they did not interchange employees; and they operated with different managers. Clearly, the district court is correct in its determination that the activities of the lounge and hotel were not conducted in a unified operation. Title 29 U.S.C.A. § 203(r), however, declares that related activities may still be an "enterprise" if common control is exerted over them.

In assessing whether the requisite "common control" is present, the determinative question is whether a common entity has the power to control the related business operations. *Shultz v. Mack Farland and Sons Roofing Co.,* 413 F.2d 1296, 1301 (5th Cir.1969). A controlling ownership interest in a business, though not a prerequisite for "common control," establishes that the power of control exists. *Id.* The right to control that is inherent in ownership is determinative of the "common control" test regardless of the extent to which the right to control is exercised. *Id.* Since Easton was the common owner of the hotel and lounge, it had the right to control the hotel and the lounge. Additionally, the lounge's liquor license supported Easton's right to control it. The liquor license gave Easton, the licensee, the responsibility under Florida law

to control the lounge. *G. and B. of Jacksonville v. Florida,* 371 So.2d 139, 140 (Fla. Dist.Ct.App.1979). Clearly, the activities of the hotel and lounge were conducted under Easton's control, and the district court erred in holding that Easton did not have "common control" over the lounge and the hotel.

### C. Common Business Purpose

 The Act fails to define the "common business purpose" requirement. More than a common goal to make a profit, however, must be shown to satisfy the requirement. *Brennan,* 482 F.2d at 1367. Many of the considerations relevant in determining the existence of related activities are pertinent to determine the existence of a "common business purpose." *Wirtz,* 362 F.2d at 861. The only evidence portraying the lounge and the hotel as a single unit was an outdoor sign advertising the hotel and lounge. The remainder of the evidence establishes that the hotel and lounge were separate entities attempting to obtain separate profits. The profits from the Downtowner Lounge went into the Downtowner checking account, and profits from the Ambassador Hotel went into the Ambassador checking account. There was no intermingling of profits. It is clear, therefore, that the district court was correct in determining that no common business purpose existed between the Ambassador Hotel and the Downtowner Lounge.

While mindful of the liberal construction given to the definition of "enterprise," we find that the Ambassador Hotel and the Downtowner Lounge were not related activities nor engaged in a common business purpose and, therefore, not an enterprise within the meaning of the Fair Labor Standards Act. Because we find the Fair Labor Standards Act inapplicable to the Downtowner Lounge and the Ambassador Hotel, there is no need to consider the willfulness issue.

AFFIRMED.