Raymond J. DONOVAN, Secretary of
Labor, U.S. Department of
Labor, Plaintiff,

v.

STAR BAKERY, INC., et al.,
Defendants.

Civ. No. 84–2102(PG).

United States District Court,
D. Puerto Rico.

Jan. 27, 1986.

Luis A. Micheli, U.S. Dept. of Labor, New York City, for plaintiff.

Daniel Domínguez, Hato Rey, Puerto Rico, for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

This is a civil action brought by the Secretary of Labor under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. (hereinafter referred to as FLSA or the Act) against Star Bakery, Inc., and Panaderia y Reposteria El Rincón Español, Inc. The complaint was filed on August 17, 1984, alleging that defendants' employees were employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(2) of the Act (29 U.S.C. § 203(s)(2)) and that from August 1, 1981, to January 1984 defendants had violated the provisions of sections 6, 7, 11(c), 15(a)(2) and 15(a)(5) of the Act.[1]

Plaintiff asserts that the business activities of defendants Star Bakery, Inc., and Panadería y Repostería El Rincón Español, Inc., are related and performed through unified operation or common control for a common business purpose, thus constituting an "enterprise" within the meaning of section 3(r) of the Act.[2]

Defendants contend that the enterprise provisions of the FLSA do not bring them within the coverage of the Act because they are not related activities performed through unified operation or common control for a common business purpose so as to constitute a single enterprise within the meaning of the Act.

On November 14, 1985, defendants filed a motion requesting that summary judgment be entered in their favor. They allege that the concept of "enterprise" is not applicable to defendants. On November 22, 1985, plaintiff filed its opposition to the motion for summary judgment. On November 25, 1985, the Court heard argu-

ments from both parties on the motion for summary judgment. Without opposition thereto, defendants requested a bifurcation of the proceedings in order that the issue of enterprise coverage under the FLSA be tried before the issue of liability. *Marshall v. Sideris*, 524 F.Supp. 521 (D.Neb. 1981), reversed and remanded on other ground, *Donovan v. Sideris*, 688 F.2d 74 (8th Cir.1982). Trial was bifurcated and this Court proceeded to receive evidence exclusively on the issue of whether there existed coverage under the FLSA. Upon consideration of all the evidence adduced at trial and the documents and motions filed by the parties, this Court enters the following findings of facts and conclusions of law.

### Findings of Fact

1. Star Bakery, Inc., (hereinafter Star Bakery) was incorporated in 1966 by Mr. Arturo Suárez and Mr. Héctor M. Lauzurique, each owning 50% of the outstanding stock. Mr. Laurzurique sold 25% of his stocks to Mr. Tomás Pérez and the remaining 25% to Mr. Ceferino González. They each paid $10,000 for the stocks.

2. The officers of Star Bakery are Tomás Pérez, President; Arturo Suárez, Vice President; Ceferino González, Treasurer; and Ilia Maria Pérez, Secretary. These same persons are the directors of the corporation.

3. Panaderia y Repostería El Rincón Español, Inc., (hereinafter El Rincón Español) was incorporated in 1977 by Mr. Arturo Suárez, who owns 60% of the outstanding stock, and Mr. José González, who is the proprietor of the remaining 40% of the stock, having paid $12,000 for said participation.

4. The officers of El Rincón Español are Arturo Suárez, President; José González, Treasurer; Ilia Maria Pérez, Secretary. The Board of Directors is composed of these same officers.

---

**1.** 29 U.S.C. §§ 206, 207, 211(c), 215(a)(2), 215(a)(5), respectively.

**2.** 29 U.S.C. § 203(r).

5.  José González and Ceferino González are brothers and they are cousins of Arturo Suárez. Tomás Pérez and Ilia Maria Pérez are brother and sister. Ilia Maria Pérez is married to Arturo Suárez.

6.  Star Bakery is located at Royal Palm 1F–29, Lomas Verdes, Bayamón; its telephone number is 785–9422, operating for business from 6:00 a.m. to 11:00 p.m.

7.  El Rincón Español is located at Santa Juanita Avenue, BR–11, Bayamón; its telephone number is 787–0222, open for business from 6:00 a.m. to 10:30 p.m.

8.  The business store of Star Bakery looks physically different from El Rincón Español.[3]

9.  At all times relevant to the complaint, the annual dollar volume of Star Bakery was less than $362,500; its income for 1981 was $245,675.88; $265,530.41 for 1982; and $280,802.95 for 1983.

10.  At all times relevant to the complaint, the annual dollar volume of El Rincón Español was less than $362,500: $207,359 for 1981; $204,789.21 for 1982; and $193,076.69 for 1983.

11.  At all times pertinent to this action Star Bakery and El Rincón Español had separate and independent utilities accounts, banking accounts,[4] funds, inventory, offices, warehouses, accounts with suppliers, purchasing, insurance policies and lease agreements. Each corporation maintained at all times relevant hereto its own separate and independent unemployment, social security and State Insurance Fund accounts. They each filed their own separate and independent municipal taxes, movable property taxes, income taxes and domestic corporation reports. Each corporation has its own separate and independent advertisement and publicity and pays for it from its own independent funds.

12.  The employees of each corporation are not the same and there is no evidence of hourly, daily, weekly or monthly interchange of personnel during the periods referred to in the complaint. They each have separate pay weeks and pay days.

13.  The hiring and firing, supervision and job assignment of employees is done by the corporate officials of each respective corporation. There is no interchange in these duties and there has been none during the periods referred to in the complaint.

14.  Mr. Ariel Silva worked part-time as a baker for El Rincón Español and for a short period during his free time he also worked part-time for Star Bakery as a baker.

15.  Mr. Arturo Suárez, from 1981 to 1984 did not personally hire any of the employees of Star Bakery or El Rincón Español.

16.  Mr. Tomás Pérez and Ceferino González did all the hiring, firing and determination of the employees' schedules at Star Bakery from 1981 to 1984. They did no hiring or firing for El Rincón and they did not participate in operational decisions of El Rincón.

17.  Mr. José González did all the hiring and firing of employees at El Rincón Español. He also determined the working schedules of the employees during the periods referred to in the complaint. He did no hiring or firing and he did not participate in operational decisions of Star Bakery.

18.  Each corporation paid the salaries of its employees from its own funds at all times relevant hereto.

19.  Each corporation owns its equipment and machinery and is responsible for its maintenance. No interchange of machinery or equipment transpired between defendants during the periods referred to in the complaint.

20.  Some items in the menus of each defendant corporation are the same; others are not. There are items not served by the other. The prices are mostly more expensive at Star Bakery than at El Rincón Español. The sector of the public to which Star Bakery caters is more affluent.

---

**3.**  The two stores are not similar in appearance like two retail Burger Kings or McDonalds.

**4.**  El Rincón Español has its account at Banco de Ponce and Star Bakery at Citibank.

21. Each corporation has had its own separate financing. Mr. Arturo Suárez has not been the sole financial source of either corporation. The funding for each corporation between 1981 and 1984 came from their own respective shareholders, all of whom paid for their stocks.

22. There is no intermingling of funds between the corporations, and they do not participate in the profits and losses of the other.

23. The corporate defendants kept separate records for profits, expenditures and personnel matters at all times relevant to the complaint.

24. Fifty per cent (50%) of the stockholders of Star Bakery do not participate operationally or financially in activities of El Rincón Español.

25. Forty per cent (40%) of the stockholders of El Rincón Español do not participate operationally or financially in activities of Star Bakery.

26. At all times pertinent hereto, all the decisions regarding Star Bakery were made by Tomás Pérez, Ceferino González or Arturo Suárez.

27. At all times pertinent hereto, all the decisions regarding El Rincón Español were made by José González or Arturo Suárez.

28. Each corporation buys from local distributors separately and independently. The corporations sometimes buy from the same distributors since said distributorships are exclusive in nature.

29. There are some common elements between Star Bakery and El Rincón

Español, to wit: Mr. Arturo Suárez is a stockholder, officer and director in both corporations; Mrs. Ilia Maria Pérez is the secretary of both corporations; both use the same outside accountant.

### Conclusions of Law

■ This Court has jurisdiction over the subject matter and the parties pursuant to 29 U.S.C. § 217. The sole question now before the Court for determination is whether the activities of Star Bakery and El Rincón Español are covered by the FLSA as an "enterprise" engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(r) and 203(s).[5]

Should there exist an "enterprise" under the Act, it is undisputed that the gross volume sales will exceed the amount designated in the statute. On the other hand, if there is no "enterprise", the gross volume sales of each does not reach the designated jurisdictional amount and defendants are not covered by the Act.

The determination as to whether two businesses constitute a single enterprise for purposes of the FLSA is an issue to be resolved case by case based upon the particular facts of each case. *Wirtz v. Barnes Grocer Co.*, 398 F.2d 718 (8th Cir.1968); *Wirtz v. Hardin Co.*, 253 F.Supp. 579 (D.Ala.1964), *aff'd.*, 359 F.2d 792 (5th Cir. 1966). There must coexist three elements before defendants' activities can be considered a single enterprise: (1) related activities, (2) performed through unified operation or common control, (3) for a common business purpose. 29 U.S.C. § 203(r); *Brennan v. Arnheim & Neely, Inc.*, 410

---

5. 29 U.S.C. 203(r) provides in part:
(r) "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements....
29 U.S.C. § 203(s) states in pertinent part:
(s) "Enterprise" engaged in commerce or in the production of goods for commerce means an enterprise which has employees engaged in commerce or the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and which—
(2) is an enterprise which is comprised exclusively of one or more retail or service establishments, as defined in section 213(a)(2) of this title ..., after December 31, 1981, whose annual gross volume of sales made or business done is not less than $362,500 (exclusive of excise taxes at the retail level which are separately stated); ...

U.S. 512, 93 S.Ct. 1138, 35 L.Ed.2d 463, *reh. denied,* 411 U.S. 940, 93 S.Ct. 1888, 36 L.Ed.2d 402 (1973).

The Court turns now to an examination of each of the three above-listed elements in light of the factual circumstances present in this case.

### A. *Related Criteria*

■ The Act does not define the term "related activities", but the term is explained in the legislative history and in the Secretary of Labor's (hereinafter the Secretary) interpretations. The Senate Report states that businesses are "related" within the meaning of section 3(r) either when they are the same or similar, such as individual stores in a chain or when they are auxiliary or service activities. (S.Rep. No. 145, 87th Cong. 1st Sess., 1961 U.S.Code Cong. and Ad.News 1620, 1660). The Secretary's interpretative bulletin adopts these definitions and explains them in detail. 29 C.F.R. §§ 779.205, et seq.[6]

In accord with the legislative history and regulations this Court finds that both corporate defendants are engaged in the same business activities. Both are engaged in the business of baking and pastries and of selling food stuffs and beverages. Because of this, we find that the difference in clientele, in prices and in the menu items[7] is not dispositive of the issue at hand.

We find that the present case is clearly distinguishable from *Donovan v. Eastern Land & Development,* 723 F.2d 1549 (11th Cir.1984), and from *Hodgson v. University Club Tower, Inc.,* 466 F.2d 745 (10th Cir. 1972), cases cited by defendants. In both of these cases the activities performed by

the corporate defendants were clearly not the same. In *Hodgson v. University Club Tower, supra,* the Court of Appeals held that apartment buildings serving primarily permanent tenants did not perform the same or similar activities as a hotel serving transients and that they were, therefore, not engaged in related activities. By way of explanation, the Court of Appeals stated:

> With regard to similarity, we have establishments which are alike in that they furnish living space and accompanying facilities and services. They are different in that they attract and serve different customers and furnish different products. One provides for temporary quarters for travelers and the other permanent residence for homemakers.

466 F.2d at 748.

In *Donovan v. Eastern Land & Development, supra,* the Court of Appeals held that a lounge providing food and bar service did not perform the same or similar activities as a hotel providing for overnight accommodations. They were not involved in similar activities because of the different clientele each entity served. The hotel offered rooms to lower income people while the lounge offered food and liquor to middle and upper income people.

In the present case, this Court finds that the difference in clientele is not relevant on the issue of "relatedness" when the two entities perform the same activities.

### B. *Unified Operation or Common Control*

■ In order to constitute an "enterprise" for FLSA purposes the related activ-

---

**6.** For example, 29 C.F.R. § 779.206(a) states: Thus, activities will be regarded as "related" when they are the same or similar or when they are auxiliary or service activities such as warehousing, bookkeeping, purchasing, advertising, including, generally, all activities which are necessary to the operation and maintenance of the particular business. So also, all activities which are performed as a part of the unified business operation will be "related," including, in appropriate cases, the manufacturing, warehousing, and distribution of its goods, the repair and maintenance of its equipment, machinery and its premises, and

all other activities which are performed for the common business purpose of the enterprise. The Senate Report on the 1966 amendments makes it plain that related, even if somewhat different, business activities can frequently be part of the same enterprise, and that activities having a reasonable connection with the major purpose of an enterprise would be considered related.

**7.** The sector of the public to which Star Bakery caters is more affluent and some items in the menu are the same but others are not.

ities of the businesses must be conducted through unified operation or common control. 29 U.S.C.A. § 203(r). Plaintiff has to establish only one of these two alternative requirements. *Dunlop v. Ashy*, 555 F.2d 1228 (5th Cir.1977).

In assessing whether the requisite "unified operation" is present, the determinative question is whether the businesses are conducted or operated as a unit or as a single business. 29 C.F.R. § 779.-217. We find that they are not. The two businesses at hand keep their own records and their separate insurance policies, each file separate and independent income tax returns, social security, unemployment, State Insurance Fund, movable property tax, municipal taxes and domestic corporation reports. *See, Donovan v. Eastern Land & Development, supra.*

Each corporation does not intermingle funds as each maintains its own separate bank account. *Id.* Also, each corporation does not participate in the profits and losses of the other. *Brennan v. Electronics Corp.*, 21 W.H. Cases 1042 (W.D.Tenn. 1974). The funds of each corporation are utilized only for said corporation.

Each of the corporate entities have separate and independent accounts with their suppliers, buy their own equipment and pay for its maintenance without there being any interchange of equipment or materials. *See, Hodgson v. Perkins*, 19 W.H. Cases 672; and *Donovan v. Eastern Land & Development, supra.*

In assessing whether the requisite "common control" is present, the determinative question is whether a common entity has the power to control the related business operation. *Shultz v. Mack Farland and Sons Roofing Co.*, 413 F.2d 1296, 1301 (5th Cir.1969). Sufficient ownership to exercise "control" will be regarded as adequate to meet the common control requirement. 29 C.F.R. § 779.222 (1985). And ownership sufficient to exercise "control" exists where there is more than 50% of the voting stock, 29 C.F.R. § 779.223 (1985). In the present case, Mr. Arturo Suárez owns 60% of the outstanding stock of El Rincón Español but only owns 50% of the outstanding stock of Star Bakery.[8] Therefore, the *right* to control each business does not rest exclusively with Mr. Suárez. Furthermore, Mr. Arturo Suárez is not the exclusive *actual* decision maker of both corporations. At all times pertinent hereto the decisions regarding El Rincón Español were made by Arturo Suárez and José González. The decisions regarding Star Bakery were made by Tomás Pérez, Ceferino González and Arturo Suárez.[9]

The family ties between stockholders do not establish by themselves a unified operation or common control. *Wirtz v. Hardin Co., supra.* In that case there were six defendant corporations, all of which had as stockholders, officers and directors Mary G. Hardin and J.C. Goss, who were daughter and father. Mrs. Hardin's former husband was a stockholder in three of the six corporations and in two of the corporations Mrs. Hardin's daughters were stockholders. In determining there was no enterprise the Court stated:

> Nor does the stock ownership of or the offices held by the members of the Hardin family in the corporations substitute for the absence of facts establishing the criteria of the statute. In the first place, the stock ownership and offices of the Hardins is entirely consistent with normal business investment practices. In the second place, the facts as found by the Court are that the businesses are operated separately and independently and that the stock ownership and offices

---

8. Aside from Mr. Suárez, there are no common stockholders between the two corporations.

9. The case of *Donovan v. Grim Hotel Company*, 747 F.2d 966 (5th Cir.1984), cited by plaintiff as authority, is clearly distinguishable from the present case. In it, Mr. Alberding, the principal stockholder, was at the apex of all five hotel corporations. He personally funded the hotels when necessary and had final and virtually sole authority to approve significant expenditures. He controlled the hotel operations. He held their purse strings and guided their policies.

of the Hardins does not control or unify the operations or activities of the stores for the performance of a common business purpose.

*Wirtz v. Hardin*, at 587–88.

Therefore, in light of the above, we find that the requisite of common control is not present.

### C. *Common Business Purpose*

 The term common business purpose "encompasses activities whether performed by one or more persons or by a corporation or other business organization, which are directed to the same business objective or to similar objectives in which the group has an interest." 29 C.F.R. § 779.213. It is well established that a profit motive alone is insufficient to justify the conclusion that related activities are performed for a common business purpose. *Marshall v. Lideris, supra*, reversed on other grounds, 688 F.2d 74 (8th Cir.1982); *Hodgson v. Univ. Club Tower*, 350 F.Supp. 817 (D.Fla.1972), *aff'd.*, 466 F.2d 745 (10th Cir.1972); *Donovan v. Eastern Land & Development, supra.*

In the present action, the only common elements between Star Bakery and El Rincón Español are that Mr. Arturo Suárez is a stockholder, officer and director of both corporations; Mrs. Ilia María Pérez is the Secretary of both corporations; and both corporations use the same outside accountant. However, the two corporate defendants are not operated in order to improve the public image of the other. They do not facilitate internal operations and do not further the business of the other. These two corporate defendants operate in a separate and independent fashion. Physically, operationally and administratively they are distinct and separate with no intermingling in these areas. *University Club Tower, Inc.*, 350 F.Supp. 817. Economically, they are also independent from each other as there are no pooling of profits. *Donovan v. Eastern Land & Development, supra.*

Furthermore, common purpose means "shared in like manner by members of the group." *Hodgson v. University Club Tower, Inc.*, 350 F.Supp. 817. The facts in this case demonstrate that 50% of the stockholders of Star Bakery do not participate in any manner in the decisions, profits and losses of El Rincón Español. Forty per cent (40%) of El Rincón Español's shareholders do not participate in Star Bakery's profits, losses or decisions. There is not one policy-making body for both corporations. Therefore, the stockholders herein do not share in like manner. In light of all the above, we find no common business purpose.

WHEREFORE, in light of the applicable law and jurisprudence this Court finds that Panadería y Respostería El Rincón Español, Inc., and Star Bakery, Inc., are related activities but not performed through unified operation or common control. We also find no common business purpose. Therefore, since these two corporate defendants are not an enterprise within the meaning of the Fair Labor Standards Act, the Secretary of Labor's complaint is hereby DISMISSED.

IT IS SO ORDERED.